**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| BARBARA VELASQUEZ,<br><br>　　　　Plaintiff,<br>　　v.<br>CAROLYN W. COLVIN,<br>Acting Commissioner of the<br>Social Security Administration,<br><br>　　　　Defendant. | No. ED CV 13-1542-AS<br><br>**MEMORANDUM AND OPINION** |

**PROCEEDINGS**

Plaintiff Barbara Velasquez ("Plaintiff"), a former fast food worker, asserts disability since June 1, 2009, based on alleged physical impairments. (A.R. 102, 105). The Administrative Law Judge ("ALJ") examined the record and heard testimony from Plaintiff and a vocational expert on February 8, 2012. (A.R. 24–37). On February 29, 2012, the ALJ denied Plaintiff benefits in a written decision. (A.R. 8–23). On July 10, 2013, the Appeals Council denied review of the ALJ's decision. (A.R. 1–3).

On September 4, 2013, Plaintiff filed a Complaint, pursuant to 42 U.S.C. §§ 405(g) and 1383(c), alleging that the Social Security Administration erred in denying her disability benefits (Docket Entry No. 3). On December 31, 2013, Defendant filed an Answer to the Complaint, and the Certified Administrative Record ("A.R.") (Docket Entry Nos. 13, 14). The parties have consented to proceed before a United States Magistrate Judge (Docket Entry Nos. 9, 11). On April 11, 2014, the parties filed a Joint Stipulation ("Joint Stip.") setting forth their respective positions on Plaintiff's claim (Docket Entry No. 18).

**THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS**

"Social Security disability benefits claimants have the burden of proving disability." Bellamy v. Sec'y Health & Human Serv., 755 F.3d 1380, 1380 (9th Cir. 1985). A claimant is disabled if she has the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment...which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In order to determine whether a claimant is disabled, ALJs follow a five-step process set forth in 20 C.F.R. § 404.1520(a)(4). "The claimant bears the burden of proving steps one through four." Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007).

At step one, the ALJ must determine whether or not the claimant is actually engaged in any "substantial gainful activity," as defined

by 20 C.F.R. § 404.1572. If claimant is not so engaged, the evaluation continues to step two. See 20 C.F.R. § 404.1520(a)(4)(i).

At step two, the ALJ determines whether the claimed physical or mental impairments are severe. 20 C.F.R. § 404.1520(a)(4)(ii). When determining severity, "the ALJ must consider the combined effect of all of the claimant's impairments on her ability to function, without regard to whether each alone was sufficiently severe." Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996) (citing 42 U.S.C § 423(d)(2)(B)). Impairments are considered severe unless the evidence "establishes a slight abnormality that has 'no more than a minimal effect on an individual's ability to work.'" Id. at 1290 (quoting Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir. 1988)). "[I]f the ALJ concludes that the claimant does have a medically severe impairment, the ALJ proceeds to the next step in the sequence." Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2005); See 20 C.F.R. § 404.1520(a)(4)(ii).

At step three, the ALJ considers whether the claimant's severe impairments are disabling. 20 C.F.R. § 404.1520(a)(4)(iii). The claimant is considered disabled if her purported conditions meet or are medically equivalent to a listing found in 20 C.F.R. Part 404, Subpart P, Appendix 1. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "[An] impairment is medically equivalent to a listed impairment in appendix 1 if it is at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. 404.1526. "Medical equivalence must be based on medical findings[]" rather than "[a] generalized assertion" or opinion testimony

regarding "functional problems."  Tackett v. Apfel, 180 F.3d 1094, 1100 (9th Cir. 1999) (citing 20 C.F.R. § 404.1526).

If the ALJ concludes that claimant is not disabled at step three, the ALJ moves to step four and considers whether the claimant can return to her past relevant work. Burch, 400 F.3d at 679; See 20 C.F.R. § 404.1520(a)(4)(iv).  In order to do so, the ALJ determines claimant's Residual Functional Capacity ("RFC").  20 C.F.R. § 404.1520(a)(4)(iv).  A claimant's RFC is "what [claimant] can still do despite [claimant's] limitations," and is "based on all the relevant medical and other evidence in [the] case record." 20 C.F.R. 416.945(a)(1).  If the claimant's RFC dictates that she can return to her past relevant work, she is not considered disabled. Burch, 400 F.3d at 679.

If the claimant proves in step four that she cannot return to her past relevant work, the ALJ proceeds to step five.  20 C.F.R. § 404.1520(a)(4)(v).  At step five "the burden of proof shifts to the Secretary to show that the claimant can do other kinds of work." Embrey v. Bowden, 849 F.2d 418, 422 (9th Cir. 1988).  At this point, ALJs "can call upon a vocational expert to testify as to: (1) what jobs the claimant, given his or her [RFC], would be able to do; and (2) the availability of such jobs in the national economy." Tackett, 180 F.3d at 1101.  If claimant does not have the RFC to work in any available jobs, she is considered disabled.  20 C.F.R. § 404.1520(a)(4)(v).

**BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION**

In applying for disability insurance benefits, Plaintiff alleged the following disabling severe impairments: arthritic knee pain, diabetes, asthma, and joint pain, and alleged that the onset date of these impairments was June 1, 2009. (A.R. 102, 105). Additionally, at the hearing before the ALJ on February 8, 2012, Plaintiff testified that she has pain in both knees and her lower back. (A.R. 29). She testified that sometimes she takes Vicodin two to three times a day, due to the pain. (A.R. 33). Plaintiff claimed that she cannot walk for more than five minutes at a time, or stand for more than ten to fifteen minutes at a time. (A.R. 29). Plaintiff also stated that she uses an albuterol inhaler daily, and takes daily medication for her diabetes. (A.R. 30—31). She further testified that she left work in 2003 due to a complicated pregnancy, and that she has been unable to find work since then. (A.R. 32).

The ALJ applied the five-step evaluation process to determine whether Plaintiff was disabled. (A.R. 13—19). At step one, the ALJ determined that Plaintiff was not engaged in any "substantially gainful activity." (A.R. 13). At step two, the ALJ found that Plaintiff suffers from the following severe impairments: morbid obesity, mild bilateral chondromalacia patellae, diabetes mellitus, and asthma. (Id.). The ALJ also noted that Plaintiff has a history of skin cancer, a right ankle sprain, abscesses, a cystic lesion, bilateral epicondylitis, and had surgery to remove a small foreign object lodged in her ear, but did not find these impairments severe

because they did not last the durational requirement or did not have "more than a minimal effect" on Plaintiff's ability to work.  (Id.).

At step three, the ALJ determined that Plaintiff's severe impairments did not meet or equal a medical listing found in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (A.R. 13—14).  Upon review of the record, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms.  (A.R. 15).  The ALJ also found, however, that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible."  (Id.).

Before proceeding to step four, the ALJ found that Plaintiff had the RFC to perform light work with the following limitations:

> lift and carry 20 pounds occasionally and 10 pounds frequently.  She can stand and walk for 6 hours out of an 8-hour workday, and she can sit for 6 hours out of an 8-hour workday.  She can occasionally climb ramps and stairs; and she can occasionally balance, stoop, kneel, crouch, and crawl[].  She cannot climb ladders, ropes, or scaffolds.  She should avoid concentrated exposure to gases, dusts, fumes, and environmental irritants.  She should avoid extreme cold.

(A.R. 14).  The ALJ based the RFC finding on the opinions of Dr. Bilezikjian, who conducted an orthopedic consultative examination, and medical consultants Dr. Lockie and Dr. Meek, all of whom determined that Plaintiff had the RFC to perform work at the medium exertion level.  (A.R. 17, 171—174, 175—181, 192—193).  However, the ALJ found that Plaintiff had the RFC to perform light work after

considering Plaintiff's subjective complaints, her morbid obesity, and the objective medical evidence. (A.R. 17).

At step four, the ALJ, relying on the testimony of the VE, found that Plaintiff was able to perform her past relevant work as a fast food worker, as generally performed. (A.R. 17–18, 34).

Alternatively, the ALJ found that, in addition to her past relevant work, Plaintiff was also able to perform other jobs existing in significant numbers in both the regional and national economies, such as an "assembler, small products," a "cashier II," or a "cleaner/housekeeper." (A.R. 18). The ALJ's findings relied on the testimony of the VE, who considered all of Plaintiff's limitations in providing his opinion. (A.R. 33–36). As a result of these findings, the ALJ concluded that Plaintiff was not disabled under 42 U.S.C. § 423(d)(1)(A).

**STANDARD OF REVIEW**

This court reviews the Administration's decision to determine if: (1) the Administration's findings are supported by substantial evidence; and (2) The Administration used proper legal standards. Smolen, 80 F.3d at 1279. "Substantial evidence is more than a scintilla, but less than a preponderance." Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). To determine whether substantial evidence supports a finding, "a court must consider [] the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion." Reddick v. Chater,

157 F.3d 715, 720 (9th Cir. 1998). As a result, "[i]f evidence can reasonably support either affirming or reversing the ALJ's conclusion, [a] court may not substitute its judgment for that of the ALJ." Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1196 (9th Cir. 2004).

**PLAINTIFF'S CONTENTION**

Plaintiff contends that the ALJ erred in her assessment of Plaintiff's credibility, and failed to provide clear and convincing reasons for rejecting Plaintiff's testimony. (Joint Stip. 2—10).

**DISCUSSION**

After consideration of the record as a whole, the Court finds that the Commissioner's findings are supported by substantial evidence and are free from material[1] legal error.

**A. The ALJ Did Not Err in Evaluating Plaintiff's Credibility**

If a claimant asserts that pain is the primary reason a severe impairment is disabling, the claimant's testimony regarding her subjective symptoms may be crucial to the ALJ's evaluation. See Johnson v. Shalala, 60 F.3d 1428, 1433 (9th Cir 1995). The ALJ must

---

[1] The harmless error rule applies to the review of administrative decisions regarding disability. See McLeod v. Astrue, 640 F.3d 881, 886-88 (9th Cir. 2011); Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (stating that an ALJ's decision will not be reversed for errors that are harmless).

make "an explicit credibility finding whenever the claimant's credibility is a critical factor in the Secretary's determination." Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990). In order to determine whether a claimant's testimony is credible, the ALJ engages in a two-step analysis. Garrison v. Colvin, 759 F.3d 995, 1014 (9th Cir. 2014).

First, the claimant "must produce objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (quoting 42 U.S.C. § 423(d)(5)(A)(1988)). In producing evidence of the underlying impairment, "the claimant need not produce objective medical evidence of the pain or fatigue itself, or the severity thereof." Smolen, 80 F.3d at 1282. Instead, the claimant "need only show that [the impairment] could reasonably have caused some degree of the symptom." Id.

Second, once the claimant has produced the requisite objective medical evidence, the "ALJ may reject the claimant's testimony regarding the severity of her symptoms." Smolen, 80 F.3d at 1284. Absent affirmative evidence of malingering, however, the ALJ may only reject a plaintiff's testimony "by offering specific, clear and convincing reasons for doing so." Id. In assessing a claimant's alleged symptoms, an ALJ may consider: "(1) ordinary techniques of credibility evaluation, such as claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears to be less than candid; (2)

unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." Id.  An ALJ may also consider "the claimant's work record and observations of treating and examining physicians and other third parties." Id.

Here, the ALJ examined the Administrative Record and heard testimony from Plaintiff. (A.R. 13–37). Based on the record, the ALJ determined that Plaintiff had "produce[d] objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." (A.R. 15). However, the ALJ rejected the claimant's testimony regarding the disabling effects of her symptoms, and offered specific, clear and convincing reasons for doing so. (A.R. 15–17). The reasons given by the ALJ are supported by the record.

Conservative Treatment

"[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding the severity of an impairment." Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007) (holding that Plaintiff's use of over-the-counter pain medications to treat pain was inconsistent with Plaintiff's claims that pain was disabling). Here, the ALJ pointed out that on a number of clinical visits, Plaintiff stated that she was only taking Tylenol or ibuprofen in order to manage her pain. (A.R. 16–17, 171, 250, 263, 327, 361, 385). Furthermore, the ALJ included in her decision the fact that December 26, 2011, was the "only time recently that any

care provider has prescribed [Plaintiff] Vicodin." (A.R. 17, 450). Accordingly, the ALJ properly relied on the medical records which showed that, until recently, plaintiff had largely treated her pain with the use of over-the-counter medication in discounting Plaintiff's assertions regarding the severity of her pain.

Objective Medical Evidence

While a claimant's testimony regarding her symptoms "cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (citing 20 C.F.R. § 404.1592(c)(2)); Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis."). Here, the ALJ found that, despite Plaintiff's claims of disabling impairments, Plaintiff's "[medical] treatment has consisted largely of visits for minor issues and transient complaints." (A.R. 17). This finding is supported by the record.

Of the numerous occasions on which Plaintiff sought medical treatment in 2010 and 2011, only a few involved complaints of back or knee pain. (A.R. 276, 361, 371, 396, 427).[2] The ALJ found that despite her complaints of debilitating knee pain, "x-rays of

---

[2] It should be noted, however, that two of Plaintiff's visits were the result of knee pain that occurred after she fell. (A.R. 361, 396).

11

[Plaintiff's] knee have been normal." (A.R. 17, 173, 386, 391). Furthermore, the ALJ reiterated Dr. Bilezikjian's findings that Plaintiff "is able to move about the office slowly, without any assistance, and is able to get onto and off the examination table...without any assistance or difficulty." (A.R. 15, 172). The ALJ also noted Dr. Bilezikjian's observations that Plaintiff's gait appeared normal, her knees displayed "no instability," and that she "[did] not use assistive devices or braces for normal ambulation." (A.R. 15, 172—173).

With respect to Plaintiff's asthma, the ALJ pointed out that although Plaintiff suffers from asthma, there is "no evidence of emergency room visits or hospitalization for acute asthma exacerbation." (A.R. 17). Because Plaintiff's allegations of pain are unsupported by objective medical evidence, the ALJ properly found Plaintiff's statements regarding the disabling effects of her symptoms to be less than credible.

Contradiction With The Medical Record

"Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony." Carmickle v. Comm'r Soc. Sec. Admin., 533 F.3d 1155, 1161 (9th Cir. 2008). Here, the ALJ found that Plaintiff's statements regarding her use of Vicodin were contradicted by the medical record. (A.R. 16). Plaintiff testified that, in order to manage the disabling pain in her knees and lower back, she takes Vicodin two to three times per day. (A.R. 29). However, the ALJ noted that December 26, 2011, was the "only time

recently that any care provider has prescribed [Plaintiff] Vicodin[]" (A.R. 17, 450), and that "the record does not show any ongoing prescription or treatment for her pain or ongoing prescriptions for Vicodin."  (A.R. 16).  Accordingly, Plaintiff's testimony that she required a prescription drug as powerful as Vicodin in order to manage her pain is undercut by the medical record.  Plaintiff contends that she "misunderstood" the ALJ's questions about when and how often she took Vicodin. (Joint Stip. 7).  This argument is unavailing.  Plaintiff testified that she must take Vicodin multiple times a day to manage her disabling pain *in response to questioning by her own attorney*. (A.R. 29).  The ALJ's questions were limited to when she had been prescribed Vicodin and who prescribed it. Therefore, Plaintiff's testimony about taking Vicodin in a continuous manner in order to manage her discomfort was not ambiguous or based on any misunderstanding of what was being asked of her.  Because Plaintiff's testimony about her use of Vicodin is belied by the medical record, the ALJ correctly found Plaintiff's testimony about the use of Vicodin to be less than forthcoming and self-serving.

Inconsistent Statements

An ALJ may rely on "ordinary techniques of credibility evaluation" in considering Plaintiff's credibility.  Smolen, 80 F.3d at 1284.  As a result, "the adjudicator may discredit the claimant's allegations based on inconsistencies in the testimony," Bunnell, 947 F.2d at 346, or based on "inconsistencies between...the testimony and the claimant's conduct," Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012).  The ALJ found that Plaintiff "made inconsistent

statements regarding why she stopped working." (A.R. 17, 32, 134, 171). The record supports this finding. At the administrative hearing, Plaintiff testified that quit working in 2003, due to complications with her pregnancy. (A.R. 32). When Plaintiff applied for disability insurance benefits, however, she claimed that she stopped working on June 1, 2009, due to knee pain. (A.R. 134). Plaintiff told Dr. Bilezikjian, at her orthopedic consultation, that she quit work in 2004 to take care of her children. (A.R. 171). The ALJ was entitled to find that these inconsistencies adversely affected Plaintiff's credibility. Additionally, the ALJ also discredited Plaintiff's testimony regarding debilitating asthma because Plaintiff continues to smoke, (A.R. 17, 32, 172),[3] and noted that despite Plaintiff's claims that she requires frequent rest throughout the day, Plaintiff testified that she spends her day keeping busy with household chores. (A.R. 30). The ALJ was entitled to rely on these factors in her assessment of Plaintiff's credibility.

Even though Plaintiff only challenges the ALJ's adverse credibility findings based upon her poor work history, statements concerning Vicodin usage, and daily activities, (Joint Stip. 2—10), the ALJ's decision to deny benefits was also based on the ALJ's findings about the lack of objective medical evidence, conservative

---

[3] Plaintiff told Dr. Bilezikjian that she smokes two cigarettes per day, (A.R. 172), and her medical records also reflect that she smokes. (A.R. 219, 222, 232, 250, 263, 290, 313, 345, 371, 427). However, when asked by the ALJ whether she smokes, Plaintiff responded "[i]t's not a big issue. I could quit. I could go a week without one or a month." The ALJ was entitled to find, based on the facts, that Plaintiff was likely attempting to understate this detrimental fact. (A.R. 32).

14

treatment, and inconsistent statements, (A.R. 15–17). As a result, even if this Court were to accept all of Plaintiff's arguments, which it does not, the ALJ's decision would still be supported by substantial evidence.

**CONCLUSION**

"If the ALJ's credibility finding is supported by substantial evidence in the record, we may not engage in second guessing." Thomas, 278 F.3d at 958-959. Here, the ALJ provided specific, clear and convincing reasons for discounting Plaintiff's statements regarding her subjective symptoms. Therefore, the ALJ's decision that Plaintiff failed to establish disability was properly based upon substantial evidence.

**ORDER**

For all of the foregoing reasons, this Court affirms the decision of the Administrative Law Judge.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: November 19, 2014.

\_\_/s/_____
ALKA SAGAR
UNITED STATES MAGISTRATE JUDGE

15